UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RANDELL ORANGE                          CIVIL ACTION NO. 12-cv-2889

VERSUS                                  JUDGE HICKS

ANGIE HUFF                              MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Randell Orange ("Plaintiff") is a self-represented inmate housed at the David Wade Correctional Center. Plaintiff alleges that a correctional officer used a chemical spray on him while he was in full restraints and not causing a disturbance. He also alleges that he was, without a hearing, placed in a strip cell for 30 days and limited to food loaf for seven days.

The parties were allowed the opportunity to conduct discovery. Plaintiff has now filed a Motion for Summary Judgment (Doc. 64), to which Defendants responded with their own Motion for Summary Judgment (Doc. 73). Plaintiff also filed a Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 82). For the reasons that follow, it is recommended that Plaintiff's motions be denied and that Defendants' motion be granted in part by dismissing certain supervisory officials. A trial will likely be required to resolve the claims against the officers who are accused of being involved in the events.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

    **A. Plaintiff's Evidence**

Plaintiff supports his motion with declarations pursuant to 28 U.S.C. § 1746, which may be competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003). Plaintiff was housed in the N-3 cellblock. He alleges in his complaint that he requested a shave, so officer Dennis Williams entered Plaintiff's cell to place him in leg irons for the trip to the shaving area. Williams felt a lighter in Plaintiff's sock. There was some

disagreement, after which Plaintiff was put in full restraints. Plaintiff states in a declaration that he was in "handcuffs with a black box around the handcuffs, chain around my waist inside the black box with a master lock on it, shackles on my ankles." Plaintiff was escorted from his N-3 cell to the N-4 lobby, where he was ordered to get on his knees and face the wall.

Plaintiff alleges that an officer sprayed him down with chemicals/pepper spray while he was on his knees in full restraints and not causing a disturbance. Notably, Plaintiff provides a definition of causing a disturbance to mean matters such as kicking the bars, flooding a cell, or destroying property. He states that he was *not* engaging in those kind of actions, but he does not say what he *was* doing. Plaintiff does not specifically address whether he was or was not shouting, screaming, or engaging in any other kind of disturbance.

Plaintiff states in his declaration that he was "stripped naked" for 30 days with "no mattress, no sheets, no blankets, no hygiene, no shoes or slippers." He was also unable to take a shower or go outside during those 30 days. He could nothing but sit on a concrete slab. He was limited to food loaf for seven days. Plaintiff states that these conditions were imposed on him without a disciplinary hearing where he would have a chance to dispute the charges or file an appeal.

**B. Defendants' Evidence**

Defendants offer affidavits from officers Rufus McDowell and Douglas Ford. Each man testifies that when Sgt. Williams came to Plaintiff's cell to restrain him for shaving, Williams noticed a bulge in Plaintiff's left sock that was later identified as a black cigarette

lighter. The lighter was considered contraband that Plaintiff should not have possessed. Williams tried to confiscate the lighter when Plaintiff became aggressive and hostile, pushed Williams away from him, and tried to dispose of the lighter by flushing it down a toilet. McDowell and Ford testify that they heard the disturbance and entered the cell to assist Williams in placing restraints on Plaintiff.

After the men placed full restraints on Plaintiff, Major Jeremy Wallace was notified of the incident, and Plaintiff was reassigned from the N-3 housing unit to the lobby area of N-4. He was also placed on strip cell status and placed on the food loaf program. Neither man offers any testimony about the use of chemical spray on Plaintiff other than to generally deny that any security personnel used excessive force.

Louis Hamilton and Tara Harris were also working as correctional officers at the time of the incident. Defendants submit their affidavits, in which each offers substantially identical testimony. Each states that they were present with Major Wallace in the N-4 lobby when Plaintiff began to "exhibit hostile behavior, yelling towards Major Wallace and creating a disturbance." They say that Wallace gave Plaintiff "several verbal direct orders to be quiet and stop yelling, but [Plaintiff] refused to comply."

The witnesses testify that Wallace then retrieved a can of chemical agent and gave Plaintiff another direct order to be quiet and stop yelling, or the chemical agent would be used. Plaintiff still refused to comply. The witnesses testify in one part of their affidavits that Wallace administered a one to two second burst of the chemical agent to the head and facial area of Plaintiff, who then stopped yelling and complied with all orders. They state

in other parts of their affidavits that "security personnel sprayed two (2) to three (3) second bursts of Deep Freeze Mace to the head and chest area" of Plaintiff after he refused to comply with orders to stop yelling. The plural "bursts" suggests there was more than one application. Nursing staff was called to treat Plaintiff, who accepted an offer of a shower.

Plaintiff was then housed on N-4 and placed on strip cell status and the food loaf program. Defendants do not offer an affidavit from Major Wallace who administered the spray. Plaintiff complains that there are video monitors on the tiers and that officials have admitted in discovery that a hand-held camera is available at the prison. Defendants have not offered any video evidence of the incident. Plaintiff contends that Defendants have stated in discovery that video is no longer available due to the passage of time.

**Excessive Force**

A convicted inmate's claim of excessive force is governed by the Eighth Amendment. The inmate must establish that the force was not applied in a good faith effort to maintain or restore discipline but was inflicted "maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995 (1992). This standard applies with equal force to claims that prison officials used a chemical agent on an inmate. Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx. 327 (5th Cir. 2004).

The Baldwin decision observed that each decision is judged on its own facts, but there are several non-exclusive factors that should be considered in assessing whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. The listed factors were: (1) the extent of the

injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Baldwin, 137 F.3d at 839.

Plaintiff and Defendants request summary judgment on this claim. There are, however, genuine disputes of material fact with regard to how and why the chemical spray was applied that preclude summary judgment for any party. Plaintiff offers evidence that he was in full restraints, on his knees, and not causing a disturbance when he was sprayed in the head/face area. Defendants offer evidence that Plaintiff was sprayed, perhaps multiple times, for exhibiting hostile behavior, yelling, and disobeying orders to cease that activity. The conflicting testimony prevents any party from obtaining summary judgment or determining that Defendants are entitled to the qualified immunity they claim.[1]

**Strip Cell Conditions**

The Constitution "does not mandate comfortable prisons," but conditions of confinement "must not involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 101 S.Ct. 2392, 2399-400 (1981). Prison officials must provide humane

---

[1] This court denied summary judgment in a similar case where an inmate claimed he was sprayed with chemical agent while fully restrained in the N-4 housing unit. Derrick Scott v. Hanson, 2006 WL 1523189. That case eventually went to a jury trial, where the jury returned a verdict for the defense. That verdict was affirmed on appeal.

conditions of confinement, ensuring that "inmates receive adequate food, clothing, shelter, and medical care ... ." Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994).

An inmate must satisfy two requirements to demonstrate an Eighth Amendment violation. First, the deprivation must be, objectively, sufficiently serious, meaning it resulted in the denial of the minimal civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, that being deliberate indifference to inmate health or safety. Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999).

The length of confinement should be considered in deciding whether the confinement meets constitutional standards. In Hutto v. Finney, 98 S.Ct. 2565 (1978), the Court stated that a filthy, overcrowded cell might be tolerable for a few days but intolerably cruel for weeks or months. The Fifth Circuit found that inmates kept in a filthy cell for only three days did not make out a violation. Davis v. Scott, 157 F.3d 1003 (5th Cir. 1998). But in Palmer inmates were subjected to cold and harsh outdoor conditions lasting less than 24 hours, and the Fifth Circuit reversed summary judgment for prison officials.

Plaintiff alleges that he was completely naked for 30 days with no mattress, sheets, blankets, or shoes, and he could not take a shower or go outside. He was also limited to food loaf for seven of the 30 days. Defendants have not attacked this claim in their motion for summary judgment, and Plaintiff can obtain summary judgment only if he establishes evidence that would entitle him to judgment as a matter of law if it went uncontroverted at trial. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264 (5th Cir. 1991); Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 146 (3d Cir. 1999). Defendants have

not offered any testimony on this issue, but they have submitted a copy of the policy for inmates placed on strip cell status. It includes provisions that a mattress will remain unless the inmate attempts to use it as a shield or barricade, a shower is allowed once a day, personal hygiene items are provided, and bed linens and blankets are provided at least during sleep hours. This information conflicts with the testimony from Plaintiff about his conditions, so he is not entitled to summary judgment on this claim.

**Procedural Due Process**

A prisoner's procedural due process rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 115 S.Ct. 2293 (1995). Prisoner Sandin was found guilty of misconduct and sentenced to 30 days disciplinary segregation in a special holding unit. The Court found no liberty interest at issue because discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a sentence imposed by a court. The solitary confinement and segregation did not present a dramatic departure from the basic conditions of the prisoner's sentence.

The Fifth Circuit, after Sandin, has found that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996). Absent extraordinary circumstances, administrative segregation, being an incident to the ordinary life of a prisoner, will never be a ground for a procedural due process claim. Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998).

This court collected decisions in James v. LeBlanc, 2011 WL 6842516 *8 (W.D. La. 2011) in which courts rejected claims that confinement to a strip cell generated due process claims, but those cases involved placement for only several hours or a few days, and the conditions described were not as harsh as those described by Plaintiff. Defendants offer testimony that a disciplinary report/rule violation report was issued to Plaintiff for violating the rule against aggravated disobedience. They have not, however, offered testimony about what, if any, hearing was allowed before Plaintiff was subjected to the strip cell conditions. Plaintiff has presented a colorable claim for a violation of due process, but there are still uncertain facts that do not allow summary judgment to be granted in his favor.

**Supervisor Defendants**

Secretary LeBlanc, Warden Goodwin, Assistant Warden Huff, and Lonnie Nail ask for summary judgment on the grounds that they are mere supervisory officers who are not alleged to have had any personal involvement in the incidents. Their names appear only in the caption of the complaint and in the section titled "Parties."

Supervisory officials cannot be held liable under Section 1983 for the actions of subordinates, such as the officers on the tier, on any theory of vicarious or respondeat superior liability. Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Plaintiff complains that Secretary LeBlanc did not look for video evidence before ruling on Plaintiff's appeal of his grievance, but an inmate does not have a protected liberty interest in having a grievance resolved to his satisfaction. Geiger v. Jowers, 404 F.3d 371,

374 (5th Cir. 2005). Plaintiff has not established a basis for any alternative theories of liability of these defendants. They are entitled to summary judgment.

**Motion for Injunctive Relief**

After the motions for summary judgment were filed, Plaintiff filed a Motion to Request a Temporary Restraining Order or Preliminary Injunction. He alleged that in April 2014 Captain Bruce Young threatened to use chemical agents on him. Plaintiff alleged that he filed a grievance regarding the incident, but the warden did not answer it. Plaintiff, who says he will be released from prison next year, also alleged that his mail is being tampered with. He asked the court to order officials to transfer him to another facility. To obtain the relief he seeks, Plaintiff would have to show, among other things, a substantial likelihood of success on the merits. Walgreen Co. v. Hood, 275 F.3d 475, 477 (5th Cir. 2001).

The April 2014 incident is beyond the scope of this civil action, which is focused on events that took place in 2011. Plaintiff would need to file a new civil action to assert a claim against Captain Young. Even if the claim were considered in this case, Plaintiff likely cannot state an actionable claim based on a threat of use of chemical agent. Mere threats or verbal harassment do not amount to a constitutional violation. Orange v. Ellis, 348 Fed. Appx. 69, 72 (5th Cir. 2009); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). And finally, a prisoner has no protected right under the Constitution to be housed in any particular facility or to be transferred from one prison to another, even if life in one prison may be much more disagreeable than in another. Taylor v. Tanner, 2013 WL 5781707, *6 (E.D. La.

2013). Plaintiff has not met his heavy burden of showing entitlement to any form of preliminary injunctive relief.

Accordingly,

**IT IS RECOMMENDED** that (1) Plaintiff's Motion for Summary Judgment (Doc. 64) be denied; (2) Defendants' Motion for Summary Judgment (Doc. 73) be granted in part by dismissing with prejudice all claims against James LeBlanc, Jerry Goodwin, Angie Huff, and Lonnie Nail, but be denied in all other respects; and (3) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 82) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of August, 2014.

                                                                         Mark L. Hornsby  
                                                                         U.S. Magistrate Judge